UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:14-cv-00106-MOC-DSC

| | | |
|---|---|---|
| WHITNEY NICOLE SHAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| JAMES C. GAITHER JR., | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss. Defendant seeks dismissal as a sanction for plaintiff's failure to preserve electronically stored data, to wit, sexually suggestive text messages allegedly sent by plaintiff to a married third-party paramour, which defendant contends are critical to his defense. Having considered all the pleadings and affidavits, the court finds that the sanction of dismissal is disproportionate and will deny the relief requested.

This action concerns claims arising from plaintiff's employment as an Assistant District Attorney ("ADA") in the Twenty-Fifth Judicial District, which are asserted against her former employer, who was then the District Attorney. In her Amended Complaint, plaintiff has asserted the following claims: (1) an official capacity claim for sexual harassment/hostile work environment under Title VII; (2) an official capacity claim for sexual harassment/*quid pro quo* under Title VII; (3) an official capacity claim for constructive discharge under Title VII; (4) an individual capacity claim for violation of the Equal Protection Clause of the Fourteenth Amendment under Section 1983; and (5) a supplemental state-law claim for defamation *per se*. Defendant earlier filed two separate motions to dismiss, which were denied.

-1-

Relevant to the instant motion for dismissal based on destruction of electronically stored information ("ESI") are plaintiff's contentions that she was constructively discharged when she quit her job as an Assistant District Attorney due to sexual harassment by defendant and her further claim that defendant defamed her by telling others that she was fired for having a sexual relationship with a married member of the defense bar. It appears that her claim of defamation is not based on a false accusation of sexual misconduct, to which she admits, but on what she contends is a falsely given reason for her termination.

While the now-lost text messages would typically be probative of whether the extra-marital relationship existed, plaintiff admits the affair, diminishing the probative value. What defendant contends was crucial in those text messages were texts that would be probative as to why he fired plaintiff, as he believes plaintiff texted her paramour that she had been fired because of the relationship. Clearly, if that were the case, such evidence would be probative under Title VII on pretext and under the supplemental claim for defamation on the defense of truth.

Defendant contends and, plaintiff does not deny, that the text messages were lost in May 2014 when plaintiff purportedly dropped the cell phone on which her texts were stored in a bathroom. Defendant contends that at the time the phone was destroyed, plaintiff and her counsel knew of the impending litigation, having threatened litigation in a letter nearly a year earlier, and that litigation was in fact filed the month following the phone's destruction. There is evidence which supports such assertion as it appears that on June 3, 2013, counsel for plaintiff sent defendant a letter accusing him of sexual harassment and threatening litigation. In addition, there is evidence which, if believed, would show that counsel for plaintiff specifically knew of the text messages as he allegedly discussed them with defendant's then-attorney, Sean Devereux, on or about June 13,

2013.  Mr. Devereux avers that he took contemporaneous notes of that conversation and placed a memo in his client's file.  Counsel for plaintiff, Mr. Buric, denies he read all the text messages and that he only read one exchange.  Apparently, these texts were ultimately far from private as they were eventually read by a number of people outside the relationship, including the paramour's spouse, defendant, and supposedly plaintiff's attorney Mr. Buric.

In arguing against dismissal, plaintiff claims that these texts are not relevant as defendant did not read them until sometime after he decided to fire plaintiff.  While defendant does not dispute that he only read them after he decided to fire plaintiff, he claims that his decision to fire plaintiff came after the paramour's spouse told him about the texts and the alleged affair.  Thus, defendant claims that it was his knowledge of the texts -- not his reading the texts -- that caused him to fire plaintiff. Defendant contends that had they been preserved as required by the Federal Rules of Civil Procedure, they would likely show that plaintiff told her paramour after the firing that she was fired for the affair.  Furthermore, defendant contends that plaintiff and her attorney well knew that they had a duty to preserve these text messages as they were central to defendant's response to plaintiff's December 2012 EEOC charge.

The court has given close consideration to defendant's motion and in doing so has also closely considered the recent amendments to the Federal Rules of Civil Procedure, which address this very problem.  Under recently revised Rule 37(e), the duty of a party to preserve ESI arises when litigation is "reasonably anticipated" and the loss of ESI is sanctionable when "reasonable steps to preserve" are not taken and such information cannot be restored or replaced through additional discovery.  The sanction of dismissal is not, however, a sanction of first resort.  Rule 37(e)(1) and Rule 37(e)(2) allow the court to take action no greater than necessary to cure the

prejudice resulting from the loss. Further, Rule 37(e)(2) allows treatment of loss under spoliation only where party acted with an intent to deprive.

In her affidavit, plaintiff explains that she no longer has the phone or the SIM card because when she broke her phone, she made a claim against her insurance, and her insurer required her to turn in both the broken phone and the SIM card. She further avers that she has contacted her provider in an attempt to retrieve the texts, but was informed that the provider does not store the contents of the texts, but only keeps records of when texts are sent. Further, texts are not saved to the cloud as that only stores contacts and media. Further, she avers that she has made her replacement phone and SIM card available for forensic testing, but the content of texts do not reside on the SIM card. Plaintiff admits the relationship and that she exchanged sexually explicit texts with her paramour.

The problem in this case is not that the phone was destroyed, but that the texts were not preserved well before May 2014. Clearly, litigation was not just anticipated but threatened by plaintiff and her counsel as early as June 2013. Even if this court were to accept Mr. Buric's contention that Mr. Devereux is mistaken, it is beyond dispute that plaintiff and her counsel would have reasonably anticipated litigation by June 2013, and at the latest realized by December 2013 that her texts would be central to the defense. Thus, a duty to preserve arose not later than December 2013.

Likewise, plaintiff and her counsel failed to take reasonable steps to preserve those texts as they apparently resided only on plaintiff's phone. Once it is clear that a litigant has ESI that is relevant to reasonably anticipated litigation, steps should be taken to preserve that material, such

-4-

as printing out the texts, making an electronic copy of such texts, cloning the phone, or even taking possession of the phone and instructing the client to simply get another one.

At this point, the court cannot conclude that plaintiff acted with an intent to deprive defendant of the ESI under Rule 37(e)(2); thus, spoliation does not yet come into play. Instead, the court's task is to craft an Order that cures the prejudice resulting from the loss. Assuming that all avenues have been exhausted (including issuing a third-party subpoena for the texts that may reside on the paramour's phone), it is clear that the actual texts are likely lost forever. As discussed above, however, it appears that a relatively large number of people, including defendant, read the texts and that the best evidence as to the content of those texts may be found in the testimony of those who read them. As plaintiff admits to the sexually explicit texts as well as the affair, the texts have limited probative value on that score. What defendant truly wanted out of the texts was a smoking gun – an admission against interest – by plaintiff to her paramour that she was fired because of the affair.

While any text admitting the reason for termination may be gone, there are at least two people (and maybe more) who know whether such a text was ever sent. Defendant will be free to examine those witnesses in front of a jury; they will likely deny those texts ever existed; and the jury will be free to decide whether to believe that testimony. Further, defendant will be able to explore in front of the jury the circumstances surrounding the destruction of these texts. Although the court has ruled out dismissal at this point based on spoliation, it has not ruled out a spoliation or modified spoliation instruction, and reserved that for consideration after it has heard the evidence at trial.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Dismiss (#69) is DENIED. The court does, however, reserve the right to take remedial steps at trial to remedy the harm arising from the destruction of ESI. If, after trial, there appears to be evidence that there was an intentional destruction of ESI, the court may revisit the requested relief upon the filing of an appropriate post-judgment motion and/or a motion at the conclusion of plaintiff's evidence.

Signed: September 1, 2016

Max O. Cogburn Jr
United States District Judge